UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

JAY SHRI GANESH, et al.,           )
                                   )
        Plaintiffs,                )
                                   )   Civil No. 15-12-ART
                                   )
v.                                 )
                                   )
                                   )   **MEMORANDUM OPINION**
UNITED STATES OF AMERICA,          )   **AND ORDER**
                                   )
        Defendant.                 )
                                   )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The United States determined that the plaintiffs—convenience store operators—violated the guidelines for participating in the Food Stamp Program. So it barred the plaintiffs from participating. The plaintiffs sued. The United States now moves for summary judgment. For the reasons that follow, the United States' motion is granted.

## BACKGROUND

Jay Shri Ganesh and Hiteshkumar Patel own and operate a small convenience store in Inez, Kentucky. R. 1 at 1. On October 28, 2014, they received a letter from the United States Department of Agriculture's Food and Nutrition Service ("FNS") stating that the FNS believed that they had violated the terms and provisions of the Food Stamp Program. *Id.* at 2; R 14-1 at 3. After investigating further, the FNS determined that the plaintiffs had trafficked in Supplemental Nutrition Assistance Program ("SNAP") benefits, so the FNS permanently disqualified the plaintiffs from participating in the SNAP program. R. 1 at 2. This disqualification means that the

plaintiffs cannot accept SNAP benefits as payment for goods, thus eliminating some of the store's customer base.

The FNS's decision to disqualify the plaintiffs from the SNAP program was largely based on an analysis of electronic benefit transfers ("EBT") at the store. R. 1-1 at 5–12. The FNS identified several types of suspicious transfers that regularly occurred at the plaintiffs' store. First, the FNS found 118 transfers in which the same EBT card was used at the store within a 24-hour period. *Id.* at 7. Many of these charges were for the same amount. *Id.* Second, the FNS identified many transactions where a customer would spend nearly all of his or her monthly SNAP allotment within a very short timeframe, a pattern that is inconsistent with typical SNAP recipient behavior. *Id.* at 9–10. Third, the FNS identified 275 transactions that it described as "excessively large"—while the average SNAP purchase at a Kentucky convenience store is $7.09, the plaintiffs' store handled transactions of amounts up to $253.98. *Id.* at 10–11. Finally, after visiting the plaintiffs' store, the FNS determined that nothing about the store could account for these suspicious transactions. *Id.* at 6–7. Instead, the store offered a limited amount of food that a customer could purchase with SNAP benefits, the counter space was small and not conducive to large transactions, and the store did not offer grocery carts or shopping baskets. *Id*. Based on the electronic data and the in-store visit, the FNS determined that SNAP-benefit trafficking provided the best explanation for the unusual transactions. *See id.* at 13. Thus, the FNS permanently disqualified the plaintiffs from the SNAP program. *Id.*

The plaintiffs appealed the FNS's decision. R. 1 at 2. The Administrative Review Branch of the FNS reviewed the decision and determined that the FNS had established a prima facie case for SNAP trafficking by a preponderance of the evidence. *Id.*; R. 1-1 at 12–13. The Review Branch also determined that the defendant had failed to offer any "reasonable explanations" for the suspicious transaction data. R. 1-1 at 13. Because SNAP regulations mandate permanent disqualification as the punishment for SNAP trafficking, the Review Branch held that the imposed sanction was appropriate. *Id.*

On February 11, 2015, Jay Shri Ganesh and Hiteshkumar Patel filed the instant complaint and appeal of the Administrative Review Branch's decision. R. 1. The plaintiffs asked this Court to determine the validity of the FNS's administrative orders and to void any order disqualifying them from participating in the SNAP program. *Id.* at 3–4. The government filed a motion for summary judgment.[1] R. 14. For reasons that will be explained below, the motion for summary judgment will be granted.

## DISCUSSION

Under the SNAP statute, upon the filing of a complaint, the district court shall conduct a "trial de novo" to "determine the validity of the questioned administrative action." 7 U.S.C. § 2023(a)(15). But a party is not entitled to a de novo trial if summary judgment is appropriate. *See McClain's Mkt. v. United States*, 214 F. App'x 502, 504 (6th Cir. 2006) (affirming district court's grant of summary judgment in

---

[1] The government also moved, in the alternative, to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because summary judgment is appropriate, the Court need not consider this alternative motion.

3

SNAP trafficking case); *see also J.C.B. Super Markets Inc. v. United States*, 57 F.R.D. 500, 503 (W.D.N.Y. 1972) (stating that "[t]he use of the term 'trial de novo' in [the Act] does not . . . signify an intention to provide a party the right to have its case tried if summary judgment is appropriate"). When reviewing the agency's determination, a court may only inquire as to validity of the agency's action—it may not review the imposed sanctions. *Woodard v. United States*, 725 F.2d 1072, 1077–78 (6th Cir. 1984). Furthermore, the plaintiff bears the burden of proof to "establish the invalidity of the administrative action by a preponderance of the evidence." *Warren v. United States*, 932 F.2d 582, 586 (6th Cir. 1991).

Summary judgment is appropriate when there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The party that moves for summary judgment must identify the portion of the record which demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has made this showing, the non-moving party bears the burden of "showing that there is a genuine issue for trial." *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The non-moving party can survive summary judgment only if it puts forward "significant probative evidence in support of the complaint to defeat the motion for summary judgment." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)). Thus, to survive summary judgment, the plaintiffs must show that there is a genuine issue as to whether the government met its burden of proof below.

Here, the plaintiffs have not established that the administrative action was invalid. The record contains an abundance of evidence to support the SNAP-trafficking determination. As discussed above, the government has offered three types of electronic data showing suspicious transactions at the plaintiffs' store: 1) multiple transactions made by individual beneficiaries within short periods of time, 2) transactions that exhausted a beneficiary's account abnormally quickly, and 3) excessively large purchases from beneficiary accounts. R. 14-1 at 10–12. These transaction patterns are indicative of SNAP trafficking, and the FNS determined that trafficking was the most logical explanation for this pattern. *See* R. 1-1. Additionally, the FNS visited the plaintiffs' store and determined that nothing about the store could explain the suspicious transactions. *Id.* at 6-7. The plaintiffs now attempt to explain each of these categories of suspicious transactions. None of their explanations are persuasive.

A. **Multiple transactions from a single beneficiary within a short period of time**

The plaintiffs first argue that the government has not produced sufficient evidence to support summary judgment. Specifically, they allege that redacted, unsubstantiated, circumstantial evidence—such as the electronic transaction records—is insufficient to support the SNAP-trafficking charges. R. 17 at 6. But, as explained above, it is the plaintiffs' burden to establish by a preponderance of the evidence that the administrative action was invalid. Moreover, the FNS may base its analysis on electronic data—indeed, the applicable statute explicitly recognizes that violations

5

maybe established through electronic benefit transfer reports.  7 U.S.C. § 2021(a)(2) (stating violations may be established through electronic-benefit-transfer reports); *see also McClain's Mkt.* 214 F. App'x at 502 (upholding district court's decision to disqualify store based on electronic data).

Next, the plaintiffs attempt to explain the multiple transactions by arguing that it is "impossible for [the store] to identify a SNAP card that had been used at another time by a different individual to make purchases fraudulently, or to be expected to be aware of the prior purchases that are associated with a particular SNAP account."  R. 17 at 6.  The plaintiffs seem to argue that it would be possible for someone to come into the store, make a purchase, then give his card to someone else to make a purchase.  This theory could, according to the plaintiffs, explain some of the multiple transactions.  Fair enough.  Perhaps this explanation could account for some of the suspicious transactions.  But this explanation fails to account for all of the suspicious transactions.  For example, the government points to a transaction on July 20, 2014, where an account spent $63.49 and then spent $107.94 less than two minutes later.  R. 20 at 3.  It would be physically impossible for a second person to make such a large purchase in only two minutes.  *See* R. 20 at 4 (elaborating on why such a situation is physically impossible).  Indeed, even ringing up $107.94 worth of items would presumably take longer than two minutes.  So plaintiffs' proffered explanation fails to account for at least one of the allegedly fraudulent transactions.  And 7 U.S.C. § 2021(b)(3)(B)

6

mandates that a violator be permanently disqualified upon the "first occasion" of trafficking. So the FNS's sanction was justified.[2]

**B.      Transactions that exhaust a beneficiary's account abnormally quickly**

The plaintiffs do not provide a direct explanation for this category of suspicious charges. Instead, the plaintiffs argue that they cannot verify the allegations about this category because the government has redacted the names of the accounts. Yet the plaintiffs do not explain why the names on the accounts are important. Plaintiffs do not argue that the transaction report misrepresents the transactions that occurred or offer any other theory that might make the names on the accounts useful to their case. Nor do they explain why they need the account names in order to provide an explanation for the fraudulent charges. Although plaintiffs say they would like to depose the beneficiaries, R. 17 at 7, plaintiffs do not explain how the information they would gain from these depositions would help them explain the electronic charges in question. Thus, plaintiffs' rebuttal is inadequate.

The plaintiffs also argue that the government has failed to meet its burden of proof because it only points to four example transactions that fall into this category. R. 17 at 7–8. This argument is misguided. First, as explained above, the plaintiffs—not the government—bear the burden of proof at this stage. Second, the law is clear that even one instance of trafficking is sufficient to support permanent disqualification from the SNAP program. 7 U.S.C. § 2021(b)(3)(B) (stating that a store shall be

---

[2] The government also notes correctly that the plaintiffs are ineligible for a civil monetary penalty in lieu of disqualification. In order to qualify for a civil monetary penalty, plaintiffs must submit "substantial evidence which demonstrates that the firm ha[s] established and implemented an effective compliance policy." 7 C.F.R. § 278.6(i). Plaintiffs have offered no proof of any such compliance program.

permanently disqualified on "the first occasion" of trafficking); *see also Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000) ("[P]ermanent disqualification is warranted on 'the first occasion' of coupon trafficking."). Even if the plaintiffs could explain the four example transactions, many other allegedly fraudulent transactions exist to support the FNS's allegations. *See* R 1-1 at 7–12. So the plaintiffs have, yet again, failed to show that there is a genuine dispute of a material fact.

C.  **Excessively large purchases**

The plaintiffs respond to this category of charges with only one new argument: that the large transactions can be explained by the store's low prices for soft drinks. Specifically, the plaintiffs explain that they have a good deal with the local Coca-Cola bottler, which allows them to: 1) offer Coca-Cola products at a lower price, and 2) sell 24-pack sodas instead of 20-pack sodas. R. 17 at 2, 3, 10. The plaintiffs suggest that the large purchases at their store stem from this market advantage. But the plaintiffs acknowledge that they adhere to a five-case-per-customer limit on soft drink sales. R. 1-1 at 11. And photos taken at the store indicate that a 24-pack sells for $6.49. R. 17-2 at 1. Together, this evidence suggests that Coca-Cola products could account for only $32.45 of a sale. The 275 transactions identified by the FNS as excessively large include amounts as large as $253.98. R. 1-1 at 11. The plaintiffs have failed to offer an explanation for these larger transactions. Because the plaintiffs have failed to

show that there remains any genuine dispute of a material fact, the government is entitled to summary judgment.[3]

## CONCLUSION

Ample evidence exists supporting the FNS's determination. The plaintiffs have failed to show that there is any genuine dispute as to whether the government met its burden of proof in the administrative action below. For that reason, summary judgment must be granted in favor of the government.

Accordingly, it is **ORDERED** that:

(1)   The government's motion for summary judgment, R. 14, is **GRANTED**.

(2)   A separate judgment will follow.

This the 6th day of November, 2015.



Signed By:
*Amul R. Thapar*
United States District Judge

---

[3] In the complaint and appeal, the plaintiffs also allege that the USDA failed to properly consider the three factors from 7 C.F.R. § 278.6(d) before determining sanctions. R. 1 at 3. But plaintiffs' complaint offers no evidence to support this claim, nor do the plaintiffs address this claim when responding to the government's motion for summary judgment. *See id.*; *see also* R. 17. Because the plaintiffs offer no evidence to support this claim, this claim cannot survive summary judgment.